## No. 10,139.

SUCCESSION OF MRS. MINERVA SPARROW.—OPPOSITION TO ACCOUNTS AND TABLEAUX OF CHRIS. CHAFFE, JR., ADMINISTRATOR, AND HEIRS OF MRS. M. SPARROW vs. CHRIS. CHAFFE, JR., ADMINISTRATOR.

### (Consolidated.)

An administrator is entitled to credit for moneys paid out for the repair or preservation of plantation buildings and machinery, also for insurance on gin–house, though the policy issued in the name of the factor or commission merchant for the estate.

A daughter of the intestate, who occupies with her minor children a plantation dwelling–house, should not be charged rent, where she has not contracted to do so, and where the building is not needed for the administrator or a tenant and is not required for the cultivation of the plantation.

Where an administrator has conducted planting operations and a mercantile business on account of the succession, and two of the three legal heirs have agreed that their shares in the succession shall be responsible for the debts contracted by the administrator for this unauthorized cultivation of the succession plantation, they do not bind themselves personally for the debts, nor are their shares liable for more than a third of the debts. Nor are the heirs committed by such agreement to correctness of the account and estopped from disputing it. Nor will a judgment decreeing the liability of such shares for the debt be held as *res judicata* against their right to dispute it, or show its payment or extinguishment.

Where the administrator has employed competent and experienced attorneys, who are fully capable alone to perform every service required of them pertaining to the regular and usual administration of the succession, he is not authorized to employ at the expense of the succession other attorneys, whose services are directed mainly to the enforcement of a large claim against the succession in favor of a firm of which the administrator is a member. Their fee is not a proper charge against the succession.

The entire commissions of an administrator of a large succession are not properly exigible before the administration is terminated. Prior to this his commissions on sums received and distributed should be paid, and his rights as to the residue reserved for his final account. He is entitled to commissions on the rentals of the plantation, though leased by himself.

Succession of Sparrow.

A PPEAL from the Eighth Judicial District Court, Parish of East Carroll. *Deloney, J.*

*W. G. Wyley, F. F. Montgomery* and *E. D. Farrar* for Opponents :

1. Where there is no will, heirs can at any time take possession of the succession on giving security to the creditors of the succession, if they require it. Minor heirs may be legally put in possession the same as the major heirs. 24 Ann. 270 ; 25 Ann. 56, 220 ; 21 Ann. 278; 29 Ann. 347; 30 Ann. 93, 128, 178; 10 Ann. 169.

2. Heirs can take possession, under Article 1012 R. C. C., before the estate is wound up and debts paid. Soye vs. Price, 30 Ann. 96 ; 27 Ann. 686; 25 Ann. 225, 235; 29 Ann. 347, 837; 30 Ann. 144. See also Succession of E. S. Powell, Van Bibber vs. Cosley, Admr., 38 Ann. —.

3. A succession, a juridical person, cannot contract debts without authority of court, and the administrator cannot, of his own motion, imperil the succession by engaging in mercantile and planting pursuits ; he can bind himself and the major heirs, if they are his sureties or guarantors, but such debt, not owing by the estate, cannot be set down on the tableau. 23 Ann. 189, 428 ; 25 Ann. 562; 21 Ann. 287; 22 Ann. 372; 24 Ann. 83; 26 Ann. 680.

4. As the debts of a major heir, whether as principal or surety, are distinct from the debts of the succession, they cannot be set down on the tableau and tried in the *concursus,* which is a probate proceeding ; the obligations of such major heir, whether as principal or surety, are personal to him, and he should have the right, when sued in a court of competent jurisdiction, to plead, answer, or demur, to file a reconventional demand (if he has one), and he should not be condemned without a hearing under the pretense of an estoppel. 2 Ann. 413; 5 N. S. 529.

*J. M. Kennedy* for John Chaffe & Sons, Appellees.

*Montgomery & Ransdell* for Administrator, Appellee :

1. It is the duty of an administrator of a succession to make all repairs to succession property that are absolutely necessary to preserve the property from destruction, and he is entitled to be paid by the succession for all such repairs. See Arts. 1147 and 2314 C. C, ; 33 Ann. 745 ; 24 Ann. 253.

2. If an administrator allows property of a succession to be lost and destroyed by his neglect to make usual and customary repairs, he will be personally liable to the succession for the loss.

3. A lessor is bound to make all repairs that incidentally become necessary, and result from decay. If lessor refuses or neglects to make necessary repairs, the lessee may make them and deduct from the rent. Art. 2692 *et seq.* C. C. ; 36 Ann. 888, Ross vs. Zuntz.

4. Where the qualities of lessor and lessee are united in the same person, through his representative and his individual capacity, it would be a vain thing for the lessee to put the lessor in default before making necessary repairs. Hence, default would not be necessary in such a case.

5. A lessee has a right to remove all movable improvements placed by him on leased property. 36 Ann. 888, Ross vs. Zuntz.

6. An administrator in the exercise of a sound discretion may insure property under his administration belonging to a succession, and the costs must be borne by the succession. 2 R. 103 ; 3 Ann. 396 ; 12 Ann. 96.

7. Heirs who occupy a portion of the succession property are liable for the rents. 27 Ann. 550 ; 30 Ann. 1138.

Succession of Sparrow.

8.  An administrator may retain property of a succession in his hands until his accounts are finally homologated and all his claims against the succession paid. Art. 1007 C. P.; 4 Ann. 223, Succession of George.

9.  To terminate the existence of a succession, all the heirs must be *sui juris*, and have capacity to render themselves unconditionally liable for the succession debts. This a minor cannot do. 30 Ann. 388, 743.

10. While a succession is under administration, the heirs have no right to interfere with it, and have nothing to claim until the debts are paid and the succession legally terminated. 31 Ann. 495, Cestac vs Florane

11. In fixing the value of attorney's fees, the court will look into the whole record, and two factors will enter into the discussion : One is the extent and kind of service, and the labor incident to its rendition ; the other is the ability of the party who is liable to pay. 21 Ann. 687, Cullom vs. Mock; 30 Ann. 336; 31 Ann. 130, Succession of Linton.

12. When it appears that the services of an attorney in settling up the complicated affairs of a succession have been long continued, wisely directed, and valuable, the court will be guided as to the money value of his services (in the absence of special agreement as to his fees, and of specific evidence as to extent of his services) by the opinion of the local bar to which he belongs. Succession of Jackson, 30 Ann. 463.

The opinion of the Court was delivered by

Todd, J.   To understand fully the issues involved in these cases, a brief reference is necessary to a case which was before this Court last year, entitled " Succession of Mrs. Minerva Sparrow ; Opposition to accounts, etc. ; Decker, Guardian, vs. C. Chaffe, Jr., Administrator," and reported in the 39 Ann. p. 696.

From the decree then rendered we quote as follows :

" It is ordered, adjudged and decreed that the two provisional accounts of administration herein rendered and filed by Chris. Chaffe, Jr., administrator. and the tableau of debts charged against said succession, also presented by said administrator, be and the same are hereby each and all annulled, cancelled and rejected, under and subject to the rights hereinbefore reserved in favor of said *administrator and the firm of John Chaffe & Sons* touching their claims against the two heirs of age for moneys advanced and for expenses of cultivating the succession plantations, and in favor of the administrator for moneys advanced · for the maintenance of the minor heirs—Mary and Kate Decker.

" It is further ordered that Chris. Chaffe, Jr., administrator, be required to present forthwith a provisional account of administration and tableau of debts which may be due by said succession, from which he shall exclude as debts due by said succession all expenses incurred in the cultivation of succession plantations, either by himself or Edward Sparrow, former administrator of said succession, and all items of indebtedness due to John Chaffe & Sons, either by A. M. Ashbridge or by Edward Sparrow personally."

To understand fully the nature of the reservation made in this decree, it appears from the report of that case that in the account filed by the administrator a large indebtedness was charged against the succession of Mrs. Sparrow in favor of John Chaffe & Sons incurred in the cultivation of a number of succession plantations by Edward Sparrow, the surviving husband of the deceased, and former administrator of her succession, and by Chaffe, the present administrator, which was decided to have been unequal and unauthorized. It was claimed, however, that two of the heirs of age of the said deceased—Mrs. Foster and Mrs. Ashbridge—had, by a written agreement, made themselves responsible for this large debt to the extent of their interests in the succession.

This fact is referred to in the body of our former decree and the reservations further explained in the following language (quoting):

"We, therefore, deem it our duty to reserve the rights of John Chaffe & Sons and of the present administrator, to enforce their respective claims against the two heirs of age, on account of the latter's liability for expenses incurred in the cultivation of the plantations of the succession, by proper proceedings, in *due course of administration.*"

After the case was remanded under this decree, the heirs of Mrs. Sparrow filed a petition to be recognized as her heirs at law, and to be put in possession of her succession, and that Chaffe, administrator, be ordered to render an account of his administration.

In this proceeding for recognition, and to be put in possession, John Chaffe & Sons intervened and opposed the major heirs, Mrs. Foster and Mrs. Ashbridge, going into possession of the estate, unless they first paid his claim against them, or, in the alternative, gave security for its payment.

The filing of this intervention was excepted to on the ground that John Chaffe & Sons, not being creditors of the succession of Mrs. Sparrow, they were without interest to intervene in this proceeding or any other relating to her succession.

The exception was overruled and the intervention allowed.

On the 5th of August, 1887, Chaffe, administrator, filed an account, and subsequently a supplemental account, and two tableaux—one tableau purporting to represent or show the debts against the succession as a legal entity, and the other the debt referred to in the reservation made in the previous decree, for which the heirs of age, or rather their shares in the succession, were claimed to be liable.

This item is mentioned and described in the tableau thus:

" Claim of John Chaffe & Sons, for expenses incurred in the cultivation of the succession plantations by Edward Sparrow, former administrator, as set forth and ordered in said decree, one-half thereof to be paid out of the share of said Mrs. Foster and said Mrs. Ashbridge, respectively, viz : $21,000.05 out of each of said shares, equal to $42,000.04."

In the account, the administrator charged himself for rent of plantations from 1883 to 1887, inclusive, and a few debts collected, amounting in all to $19,008.28.  He credits himself with payment made on account of repairs, taxes, attorneys' fees, costs, commissions, etc., amounting to $12,227.53, leaving a balance in his hands of $6780 for distribution among the heirs.  This sum he proposes to divide into three equal parts, and to credit the portion thereof of the minors to account of advances made to them by the administrator for their maintenance, and those of the major heirs, Mrs. Foster and Mrs. Ashbridge, to the plantation account in favor of John Chaffe & Sons, under their agreement subjecting their shares in the estate as security for the debt.

These accounts and tableau of the administrator were opposed by the major heirs and tutor of the minors, the opposition extending to the entire accounts, save as to certain items admitted to be correct.

The opponents further charge maladministration and mismanagement on the part of the administrator.

They are, in substance, that the succession owed no debts when it was opened, but after seven years of administration, the administrator reports the debt of the succession, or of the heirs, at $51,831.13.

That the gross revenues since August, 1883, when the present administrator took charge, aggregated only $14,564.84, against expenses, as alleged, of $20,254.84.

It is further charged that the standing crops on the succession plantations on the 5th of August, 1883, when the administrator went into possession, were inventoried and appraised at $16,780.50, and a stock of goods in the Midland store was inventoried at $1379.65, of which the administrator makes no account whatever.

Mrs. Foster and Mrs. Ashbridge made special opposition to the claim or charge of John Chaffe & Sons, directed against their shares in the succession, on the ground that such a claim was improperly included in the administrator's account; that it was in the nature of a demand, and against them as heirs, and not against the succession, and one, which it had been decreed, the succession did not owe, and, therefore, could not be legally urged in a probate proceeding, nor

enter into an administrator's account. That the alleged indebtedness is charged *in globo* wherever they were entitled to be informed, by proper proceedings, of the precise nature of the demand and to have oyer of the accounts on which it was based, and further entitled to plead, answer or demur, after having been regularly sued, and ought not to be condemned, without a hearing and without trial, in a court of ordinary jurisdiction. Subject to this exception, they answered, denying the existence of the debt, and charging that the claim was false and fraudulent throughout."

It was also charged by them that certain writings, designated as X, Y and Z, on which the liability of their interests in the succession to John Chaffe & Sons purports to be founded, were signed by them in error—an error induced by the false and fraudulent representations of Chaffe, administrator, and one of his attorneys. That they were made to believe, by these representations, that the succession of their mother, Mrs. Minerva Sparrow, was largely indebted to said firm of John Chaffe & Sons, and that their only hope or chance for realizing anything from the succession was by executing these agreements purporting to bind their said interests as surety for advances and supplies made to the plantation by the firm of John Chaffe & Sons.

Mrs. Foster, in her own behalf, further represents, in substance, that she was induced by like false and fraudulent representations, by the same parties, to consent to the preparation and filing of an intervention in the proceeding relating to the provisional account and tableau filed by Chaffe, administrator, in 1885, by which it is sought to establish the liability aforesaid for the acts and gestion of her father' Edward Sparrow, decreeing his irregular administration of her mother's succession, and his illegal cultivation of the plantations of the estate. She avers that, owing to said misrepresentations and deceptions practiced upon her, that she is in no way bound by said pretended intervention.

Pleas of *res judicata* and estoppel were filed against the major heirs, under which it was contended that they were debarred from disputing the correctness of the claim urged against them or the mode of its prosecution.

These pleas were sustained.

The proceeding of the heirs to be put in possession, and their opposition to the accounts and tableaux were consolidated and tried together and judgment rendered substantially as follows :

The account and tableau were approved and homologated except as to certain charges of insurance and expenses growing out of the plant-

ing operations, amounting in all to $466.36, and the tableau was amended by rejecting the claim of D B. H. Chaffe for attorney fee; by reducing the fee of Montgomery and Randdell from $4117.50 to $2862.75, and the commissions of the administrator from $2134.42 to $1680.40, and in all other respects, the account, as relates to the succession, was approved and homologated. The pleas of res adjudicata and estoppel and prescription were sustained. Mrs. Foster and Mrs. Ashbridge were each condemned to pay $21,000 to John Chaffe & Sons, and said amounts were made a charge against their respective shares in the estate of Mrs. Minerva Sparrow, to be paid after the settlement of the debts of the succession, and the administrator ordered to retain the amounts owing them, and also the amounts due by the minor heirs, advanced for their maintenance.

The demand of the heirs to be put in possession of the estate was rejected except on condition of their giving bond to secure the debts recognized against their respective shares.

From this judgment the heirs of Mrs. Sparrow appealed, and also D. B. H. Chaffe, whose claim for an attorney's fee was rejected. In this court Chris. Chaffe, administrator, in answer to this appeal, prays the amendment of the judgment by allowing the items of his account rejected by the lower court, being for $414 80 for insurance in ginhouse, $750 charged by the administrator against Mrs. Ashbridge for rent of a plantation dwelling-house.

## I.

Account of administrator filed 5 August, 1887, and opposition thereto and supplemental account.

The administrator charges himself with $19,008.29, being almost exclusively for rents of plantation from July 5, 1883, to and including the year 1887, at $4000 per annum—the rental fixed by our former decree

He credits himself for payment made on account of the succession with $12,227.53, leaving a balance in his hands of $6780.76, which he proposes to apply towards the payment of the debts of the heirs.

Of these credits the opponents admit the correctness of $6090.36, leaving in dispute $6137.17.

The main items opposed are those for repairs, attorney fees and commission of administrator.

(a) The contention of the opponents is that none of the credits claimed for repairs and improvements should be allowed for the reason that by the terms of the decree of this court the credit of the administrator were restricted to taxes paid and commissions, the language

of the decree being: " That he shall charge himself as rent for the plantations and their appurtenances during the whole time he cultivated them at the rate of $4000 per annum for the whole, subject to deduction of taxes and administrator's commissions.

It is proved to our satisfaction that all the repairs made and paid for, which compose the items objected to, were such repairs as, in our opinion, were necessary for the preservation of the plantation buildings and machinery.

Independently of the decree referred to, it was the duty of the administrator to preserve the property and defray the expenses for such preservation; and to find in the decree any prohibition of an expenditure for such an essential purpose would be giving too narrow a construction to its language. The judge a quo rejected the opposition to this item, and we shall not disturb his ruling on this point.

The credit claimed for insurance on the gin-house was of a like character as those for necessary repairs, but the judge rejected this charge, and there is a prayer for an amendment in this respect. It is objected to on the ground that the policy issued in favor of John Chaffe & Sons, but the evidence makes it certain that though thus issued, the property covered by the insurance was the gin-house on one of the succession plantations, and the succession should pay it; and the amendment is allowed. The amount of the item is $414.80.

(b) The attorney fees charged are as follows:

| | |
|---|---|
| Montgomery & Ransdell | $5,017 05 |
| Less amount paid | 900 00 |
| Balance claimed | $4,170 00 |
| Bayne & Dengré | 250 00 |
| D. B. H. Chaffe | 250 00 |
| Total | $5,617 00 |

The fee of Montgomery & Ransdell was reduced to $2862, and, adding the $900 already paid, made it $3762.75.

A great deal of the litigation attending the settlement of this succession has been caused by the attempt to enforce against the succession the personal debt of Gen. Sparrow, contracted during and on account of his unauthorized cultivation of the succession plantations, and which debt was rejected by our former decree as a charge against Mrs. Sparrow's succession. Therefore the professional services of these attorneys in this respect, at least, cannot be regarded as enuring to the benefit of the succession.

We have carefully examined the record and considered the proceedings with special reference to making a just estimate of the services rendered by these gentlemen, and we think they should be allowed a fee of $3250, and deducting the $900 received by them, would leave a balance due them of $2350; this to include services rendered and to be rendered in the settlement of the succession, and the judgment appealed from must be amended conformably to this conclusion.

The fee of D. B. H. Chaffe was properly rejected. His services were directed towards supporting the claim of John Chaffe & Sons, and there was no need of his help in any way relating to the usual and required services of attorney attending the administration of successions. The regular attorneys of succession were able, skillful and fully competent of themselves to discharge the duties and responsibilities pertaining to their employment.

The fee of Messrs. Bayne & Denegré was for services rendered the administrator. They were doubtless valuable to him and to the succession, but they were not indispensible, and were in the line of those services which strictly devolved upon the regular attorneys of the succession, and which the administrator should have required of them. If he, a non-resident of the parish where the succession was opened, accepted the administration of it, and found it a matter of convenience to consult attorneys at the place of his residence instead of the regular attorneys for the succession, the charge should not fall on the succession, especially in view of the fact that a full and adequate compensation was allowed the latter for all services required in the administration of the succession. This charge, therefore, should have been rejected.

(c) The commissions charged by the administrator amount to $5,017.05. The administration is not yet closed, and we do not think that the succession should now be taxed with the entire commissions. These are only properly exigible upon a final settlement, to be adjusted in the final account.

Without, therefore, determining whether the charge is correct or not as to the amount claimed, we think it proper that the commissions of the administrator at present should be confined to the sums received by him for or on account of the succession since he took charge of it. The sums so received he reports at $14,964.10, upon which he properly charges a commission of $374, which is approved, and the right is reserved to him to claim the residue of his commissions to be settled in the final account.

## II.

The account of John Chaffe and Sons, which was rejected by our decree in the former appeal as a charge against the succession of Mrs. Minerva Sparrow, was properly placed on the administrator's account. This became proper and even necessary from the terms of the former decree. It is too late to question the correctness or propriety of that decree in this regard. Whilst rejecting the claim as a charge against Mrs. Sparrow's succession, we held, substantially, that the major heirs of Mrs. Sparrow, or, at least, their shares or interests in their mother's succession were surety for the debt to be paid, if required, in due course of administration. That necessarily implied that their shares in the estate should be ascertained and fixed by the final settlement of the succession under administration. And until a partition could be made, of course, the entire assets of the succession, including the shares of these heirs, would remain in the hands of the administrator, who, by the terms of the decree, was authorized to apply them, as far as might be necessary, to the payment of the account of John Chaffe & Sons.

The judge *a quo*, however, seemed to consider that the respective shares or interests of these heirs were liable each for one-half the debt. This was a mistake. These heirs are not personally bound for any part of the debt. Only their shares in the succession are made subject to it under their engagement or contract. Had they been personally liable as heirs, they could only have been bound to the extent of their virile shares, and such shares, each being one-third of the estate, there being in all three heirs, are each bound only for one-third of the debt.

The plea of *res adjudicata* presented by the accountant was properly sustained, at least to this extent, that this claim of John Chaffe & Sons should be placed on the account, and settled contradictorily with these heirs in due course of administration, and their respective shares in the succession to be liable for the debt under their guarantee in favor of these creditors. At that time Mrs Foster, one of the heirs, acquiesced in this view of the matter, but since the decree was rendered she has shifted her position and seeks now to be relieved from her obligation of guarantee or suretyship on the grounds of fraud and error, of a similar character urged by Mrs. Ashbridge in the previous appeal. In that case we passed on the grounds of error and fraud set up by Mrs. Ashbridge, and ruled that they were insufficient to relieve her from her agreement. So, in like manner, we have carefully considered in the instant case the fraud and error charged by Mrs. Foster

against the obligation as relates to herself, and have reached the same conclusion as we did in relation to Mrs. Ashbridge.

The judge, however, erred in extending the scope of the plea beyond this.

There was nothing, however, in our former decree that adjudged these opponents or their interests in their mother's succession to be liable for the claim or account of John Chaffe & Sons as presented and reported in the account, or any portion of it. The correctness of the account as against any one was not determined. In that case it was prosecuted as a just claim against Mrs. Sparrow's succession exclusively. As such it was rejected by the court, with the right reserved to the creditors to prosecute it against her major heirs in the manner now being done to the extent of their interests in the succession.

The question as to the correctness of this account as relates to these opponents is still an open one; and the judge a quo was, therefore, in error in excluding all evidence in opposition to the claim or going to show its extinguishment by payment or otherwise.

This refers especially to that feature in the opposition, wherein it was sought to charge the administrator with the proceeds of the cotton crops growing on the succession plantations when the accountant entered on his administration and took possession of the estate. The cotton crop was alleged to have been sold for $36,000, and besides there was a stock of goods and other things for which an account was sought from the administrator.

True, these crops did not belong to the succession of Mrs. Sparrow, for which reason mainly an inquiry about them was suppressed, but it was for this very reason that they did not belong to Mrs. Sparrow's succession, and consequently must have belonged to Gen. Sparrow's succession, that this inquiry sought should have been permitted.

These major heirs or their succession interests are not sought to be held liable for this indebtedness by reason of their heirship of their mother, but solely on account of their father's acts and administration.

The only matter to be determined upon this branch of the case was how much did Gen. Sparrow or his estate owe John Chaffe & Sons for advances and supplies furnished him during his illegal administration of the succession and for the cultivation of its plantations, and for which these heirs have bound their interests to the extent stated. The only way to ascertain this indebtedness was to credit Chaffe & Sons with all they had supplied or advanced to these plantations or to Gen. Sparrow for their cultivation, and to debit them with all they received in cotton or other things from the plantations or from Gen

Sparrow or the present administrator. It was only by liquidating this indebtedness between these creditors and Gen. Sparrow that it was possible to ascertain or fix the amount, if any, for which the shares of these heirs in the succession of their mother could be made responsible, and ascertain the precise sum that the administrator was authorized, under our previous decree, of applying to his firm's claim.

It was certainly not the intention of this Court, whilst extending to John Chaffe & Sons the right to prosecute their claim against these heirs in this probate proceeding—and but for the peculiar exigencies of the case, a very irregular proceeding—and at the same time deny these parties the privilege of a full inquiry into the merits of the claim, and at the same time shut them off from any and all defenses they would otherwise be authorized to make against it. No ; in remitting the parties to this mode of proceeding, it was with a full reservation of their respective rights as plaintiffs and defendants, creditors and debtors.

### III.

We think the plea of prescription urged by the major heirs against the claim or account of John Chaffe & Sons was properly overruled. So far as the proceeding then to make liable their shares in the estate to the payment of the debt, it was not subject to the terms of prescription pleaded against it. Besides, we consider that prescription was interrupted by the present and past proceedings taken by the creditors looking to the enforcement and realization of their claim.

### IV.

The judgment of the lower court rejected the demand of the heirs to be put in possession of the estate, except on the conditions mentioned--i. e., that the major heirs should first pay, or give bond to secure, the claim of John Chaffe to the extent of their engagement, and the minors should pay or secure the advances made to them by the administrator since the opening of the succession.

The right is given by pristine law to the heirs of a deceased person to take possession of his estate, though under administration, upon paying the debts of the estate, or giving the prescribed security therefor.

This right the heirs in this instance would be entitled to demand, except for the obstacle interposed, growing out of their agreement respecting the indebtedness of their father to John Chaffe & Sons, and the former decree of this Court prescribing the mode by which that agreement was to be enforced. The shares of the heirs in the succes-

sion of Mrs. Sparrow was to be ascertained in the final settlement of her succession, and those shares, in due course of administration, were to be applied, if required, to the payment of the debt in question.

To permit them to take possession of the estate before these conditions were fulfilled, or they discharged therefrom, would be virtually to annul this former decree. So, as to the major heirs, we think the conclusion of the judge was in this regard wise and conservative, and it will not be disturbed.

As to the minor heirs, however, their right to go into possession of the estate to the extent of their interest therein, is burthened with no such abstracts. They are in no manner bound to John Chaffe & Sons for this debt. All the debts of Mrs. Sparrow's succession have been discharged, or there are funds to do so. The minors may be indebted to the succession or the administrator for advances made to them for their maintenance; but this does not debar them from the exercise of this clear legal right. Besides, even if the law did not provide adequate powers to enforce any claim the administrator might have against the minor heirs, it is evident that the administrator already has in his hands funds that can be applied to the satisfaction of any demands against them. As to the minor heirs, therefore, the judgment must be reversed and they put in possession of the succession or their undivided interests therein, subject to the condition only that they be charged with one-third of the commissions of the administrator upon the entire succession.

This completes the review of all the questions and issues embraced in this appeal, and from the conclusions announced above respecting some of them, it will be seen that it necessitates the remanding of the cause for the determination, at least, of some of the matters in controversy.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended in the following particulars, to-wit:

1. That the administrator be allowed credit on his account for the sum of $466.36, being for insurance and repairs on plantation buildings, which charge is now approved.

2. That the credit claimed for the fee of Bayne & Denegre be rejected.

3. That the fee of Montgomery & Ransdell be fixed at $3250, subject to a credit of $900 already paid, leaving balance of $2350 due.

4. That the commissions of the administrator now exigible be reduced to $374, with the right reserved to recover the residue to which they may be entitled at the final settlement of the succession.

5. That the accounts of the administrator and tableau of debts so far as relates exclusively to his administration of the succession of Mrs. Minerva Sparrow, as thus amended, be approved and homologated, and the judgment of the lower court, as thus amended, be affirmed.

6. That the judgment overruling the plea of prescription filed by the major heirs be affirmed.

7. That the judgment so far as it rejects the demand of the major heirs to be put in possession of the estate, except upon the terms and conditions therein imposed, be also affirmed; but that in so far as it rejects the demand of the minor heirs or their tutor to be put in possession of their interests therein, or to the extent of their interests, that it be reversed, and that the said minors, through their tutor, be put in possession, subject only to the charge of being liable for one-third of the commissions of the administrator on the entire succession, to be paid out of their funds in the hands of the administrator.

8. That the pleas of *res adjudicata* and estoppel against the major heirs be overruled and the judgment therein amended to the extent expressed and indicated in the body of this opinion.

9. That in all other respects the judgment be annulled, avoided and reversed, and the cause be remanded to the lower court for the sole purpose of determining the amount, if any, that the shares or interests of the major heirs of Mrs. Minerva Sparrow, deceased—Mrs. Foster and Mrs. Ashbridge—are liable for to John Chaffe & Sons growing out of their written agreement touching the cultivation of the plantations of the succession by Edward Sparrow and Chris. Chaffe, administrator, and the advances made and supplies furnished by said firm for the purpose of said cultivation, and also for adjusting any indebtedness of all the heirs for advances made them by the succession or by Chris. Chaffe, administrator, reserving to all parties the right of full inquiry relating to said indebtedness claimed by John Chaffe & Sons, and the benefit of all legal pleas and defenses germane thereto, except such as may have been passed on and determined by this Court, and as fully as the same would be permissible under the ordinary jurisdiction and practice of the courts.

The costs of both courts as relates to the accounts and tableau pertaining exclusively to the succession and its administration as an entity be paid by the succession, and all other costs to abide the final determination of the controversy still left open by this decree.